# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JANE KRA DOE,

      Plaintiff,

v

MICHIGAN STATE UNIVERSITY,
USA GYMNASTICS, INC.,
LAWRENCE NASSAR, D.O.,
DESTINY TEACHNOR-HAUK,
KATHY KLAGES, WILLIAM D.
STRAMPEL, D.O., and JEFFREY
KOVAN, D.O.

      Defendants.

Case No.

Hon.

---

BRAUN KENDRICK FINKBEINER P.L.C.
By: Jamie Hecht Nisidis (P48696)
Attorneys for Plaintiff
4301 Fashion Square Boulevard
Saginaw, MI 48603
989-498-2100

## **COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, Jane KRA Doe, by and through her attorneys,

Braun Kendrick Finkbeiner P.L.C., for her Complaint, states as follows:

## I.    PRELIMINARY STATEMENT AND INTRODUCTION

1.    This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of the acts, conduct, and omissions of Lawrence Nassar, Michigan State University ("MSU"), William D. Strampel, Jeffrey R. Kovan, Kathie Klages, Destiny Teachnor-Hauk, USA Gymnastics, Inc. ("USAG"), and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiff, who was a minor when most of the sexual assaults took place.

2.    Plaintiff was a young athlete participating in gymnastics.

3.    Defendant Nassar came highly recommended to Plaintiff as a renowned osteopathic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.    Plaintiff and her parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.    From approximately 1996 to 2016 Defendant Nassar worked for MSU in various positions and capacities.

6.    From 1986 to approximately 2015 Defendant Nassar also worked for USAG in various positions and capacities.

7.     For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG who referred athletes to his care.

8.     To gain Plaintiff's trust, Defendant Nassar would make Plaintiff feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life.

9.     From 1996 to 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested dozens of patients, including Plaintiff, most of whom were minors, by nonconsensual vaginal and anal digital penetration without the use of gloves or lubricant. In some situations, he also touched and groped their breasts.

10.     The patients who were sexually assaulted, abused, and molested from 1996 to 1999 were seeking treatment for athletic injuries to their lower backs, shins, hamstrings, hip, tailbone, elbow, groin, foot, and knees.

11.     While most of the assaults were carried out at MSU, others were carried out at USAG sponsored events.

12.     In or around 1997 or 1998, Larissa Boyce[1] reported to Defendant Klages concerns regarding Defendant Nassar's conduct and "treatment."

13.     Defendant Klages dissuaded Boyce from completing a formal report and warned Boyce that the report would have serious consequences for both Boyce and Defendant Nassar.

14.     Around that same time, Jane B8 Doe[2] was questioned by Defendant Klages regarding Nassar's "treatment" and Jane B8 Doe affirmatively confirmed she had also been sexually assaulted and abused.

15.     Defendant Klages told Jane B8 Doe there was no reason to bring up or otherwise report Defendant Nassar's conduct.

16.     In 1999, Christie Achenbach, a MSU student athlete, reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

17.     In 2000, Tiffany Thomas Lopez[3], another MSU student athlete, reported to trainers concerns about Defendant Nassar's conduct and "treatment," but yet again MSU failed to take any action in response to her complaints.

---

[1] Boyce is a plaintiff in case 1:17-cv-222.
[2] Jane B8 Doe is a plaintiff in case 1:17-cv-222.
[3] Tiffany Thomas Lopez is a plaintiff in Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles.

18.    Many patients were seen alone by Defendant Nassar in the room, without chaperones.

19.    At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

20.    Because MSU took no action to investigate the 1997/1998, 1999 or 2000 complaints and took no corrective action from 2000 to 2016, under the guise of treatment, Plaintiff and other victims were also sexually assaulted, abused, harassed and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration without the use of gloves or lubricant and nonconsensual, sexual touching of the vaginal area and breasts, and inappropriate comments.

21.    While most victims, including Plaintiff, were assaulted at MSU, other victims were assaulted at USAG sanctioned events.

22.    Through his position with MSU, his notoriety, and support by USAG, Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU or USAG.

23.    Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or her parents.

24.    All of Defendant Nassar's acts against Plaintiff were conducted under the guise of providing medical care at his office at MSU.

25.     The failure to give complete and proper notice or to obtain consent for the purported "treatment" from Plaintiff or her parents robbed them of the opportunity to reject the "treatment."

26.     Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress, anxiety, panic attacks, sexual dysfunction and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

27.     In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Rachael Denhollander's[4] allegations against Defendant Nassar.

28.     Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

29.     Plaintiff has been forced to repeatedly relive the trauma of the sexual assaults.

30.     In summer 2015, USAG relieved Defendant Nassar of his duties after becoming directly aware of concerns about his actions, yet USAG failed to inform

---

[4] Rachael Denhollander is a plaintiff in case 1:17-cv-29.

its member athletes with whom it shared a fiduciary relationship and failed to inform MSU of the circumstances regarding his dismissal.

31.     As early as 1997 or 1998, representatives of MSU were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of patients.   MSU's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.*, 42 U. S. C. §1983, as well as other federal and state laws.

32.     The MSU Defendants' and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in breach of their fiduciary duties to Plaintiff with whom she had a special relationship, and in violation of Michigan common law.

33.     In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13.[5]

34.     In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan on

---

[5] State of Michigan, Ingham County Circuit Court Case No. 1603031.

charges of possession of child pornography and receipt/attempted receipt of child pornography.

35.    On February 7, 2017, an additional count was added to Defendant Nassar's federal charges for destruction and concealment of records and tangible objects as Defendant Nassar "caused a third party vendor to permanently delete and destroy all images, records, documents, and drives contained on the hard drive of a laptop computer, and [Defendant Nassar] threw in the trash a number of external hard drives" while under investigation for "his possession of child pornography, his receipt and attempted receipt of child pornography, and his sexual exploitation and attempted sexual exploitation of children."[6]

36.    On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[7] and Eaton County, Michigan[8].

---

[6] W.D. Mich. 1:16-cv-242, ECF 16, PageID.88.

[7] *State v. Nassar*, Ingham County District Court Case No. 17-00425, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_55253_7.pdf

[8] *State v. Nassar*, Eaton County District Court Case No. 17-0318, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_5_52536_7.pdf

37.     On July 10, 2017, Defendant Nassar pleaded guilty to the federal charges of child pornography, receipt/attempted receipt of child pornography, and destruction and concealment of records and tangible objects.[9]

38.     On November 22, 2017, Defendant Nassar pleaded guilty to 7 counts of first-degree criminal sexual conduct in Ingham County Michigan.

39.     On November 29, 2017, Defendant Nassar pleaded guilty to 3 counts of first degree criminal sexual conduct in Eaton County Michigan.

40.     On December 7, 2017, Defendant Nassar was sentenced to a 720 month (60 year) prison term for the federal child pornography charges.

41.     From January 16, 2018 to January 24, 2018, a sentencing hearing was held in Ingham County Michigan for the 7 counts of first-degree criminal sexual conduct to which Defendant Nassar pleaded guilty.

42.     Dozens of victims provided victim impact statements at the hearing.

43.     On January 24, 2018, Defendant Nassar was sentenced to a 40 to 175 year prison term for the Ingham County charges.

44.     From January 31, 2018 to February 5, 2018, a sentencing hearing was held in Eaton County Michigan for the 3 counts of first degree criminal sexual conduct to which Defendant Nassar pleaded guilty.

---

[9] 1:16-cr-242, Page ID.114, 119.

45.     Again, dozens of victims provided victim impact statements at the hearing.

46.     On February 5, 2018, Defendant Nassar was sentenced to a 40 to 125 year prison term for the Eaton County charges.

47.     Ultimately the acts, conduct, and omissions of the MSU Defendants, USAG, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiff by Defendant Nassar, which has been devastating for Plaintiff and her family.

48.     This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## II.     JURISDICTION AND VENUE

49.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq*., as more fully set forth herein.

50.     This Court has original jurisdiction over Plaintiff's claims arising under Section 1557.

51.    This is also an action to redress the deprivation of Plaintiff's Constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. §1983.

52.    Subject matter jurisdiction is founded upon 28 U.S.C. §1331 which gives United States District Courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

53.    Subject matter jurisdiction is also founded upon 28 U.S.C. §1343 which gives United States District Courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

54.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

55.     The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et seq*., and under Michigan Law.

56.     The events giving rise to this lawsuit occurred in Ingham County, Michigan which sits in the Southern Division of the Western District of Michigan.

57.     Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

58.     Because MSU is a public university organized and existing under the laws of the State of Michigan, Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the State, in satisfaction of M.C.L. §600.6431. Plaintiff has filed the Notice pursuant to the statute, a copy of which is attached as Exhibit A.

### III.   PARTIES AND KEY INDIVIDUALS

59.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

60.     Plaintiff's name, referred to herein as "Jane KRA Doe", has been withheld from this Complaint to protect her identity as she was a minor child at the time the sexual abuse occurred.[10]

---

[10] An ex parte motion for protective order to litigate using the pseudonym "Jane KRA Doe" is being filed contemporaneously with this Complaint.

61.     Defendant Lawrence "Larry" Nassar, was a Doctor of Osteopathic Medicine and was a resident of Michigan at all relevant times.  Upon information and belief, Defendant Nassar is an inmate in the custody of the Federal Bureau of Prisons.

62.     Defendant MSU was at all relevant times and continues to be a public university organized and existing under the laws of the State of Michigan.

63.     Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

64.     Defendant William D. Strampel, D.O. was the Dean of the College of Osteopathic Medicine at MSU and served as Dean beginning in approximately April 2002 and as Acting Dean between December 2001 and April 2002. Defendant Strampel resigned as Dean in or around December 2017.

65.     Defendant Jeffrey R. Kovan, D.O. is or was the Director of Division of Sports Medicine at MSU.

66.     Defendant Kathie Klages was the Head Coach of Defendant MSU's Gymnastics Team/Program and conducted classes and programs for children and young adults who were not members of the MSU Gymnastics Team/Program.

67.     Defendant Destiny Teachnor-Hauk is or was an athletic trainer for Defendant MSU for various sports including but not limited to softball, track and field, gymnastics, rowing, and volleyball.

68.    Defendants MSU, Strampel, Kovan, Klages, Teachnor-Hauk, and Nassar are hereinafter collectively referred to as the "MSU Defendants".

69.    Lianna Hadden is or was a trainer for Defendant MSU for various sports including, but not limited to softball, track and field, gymnastics, rowing, and volleyball.

70.    Kelli Bert is or was the Head Coach of Defendant MSU's Track and Field Team / Program.

71.    Brooke Lemmen, D.O. is or was a practicing physician with Defendant MSU's Sports Medicine Clinic from approximately 2010 to 2017.

72.    Defendant USAG was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to Michigan.

73.    Steve Penny is the immediate past president and Chief Executive Officer of Defendant USAG (named in approximately April 2005), who was responsible for the overall management and strategic planning of Defendant USAG.

74.    Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

## IV.   **FACTUAL ALLEGATIONS**

75.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

76.    At all relevant times, Defendants Nassar, Strampel, Kovan, Klages, and Teachnor-Hauk maintained offices at MSU in East Lansing, Michigan.

77.    At all relevant times, Defendants MSU, Nassar, Strampel, Kovan, Klages, and Teachnor-Hauk were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

78.    At relevant times, Defendant Strampel was the Dean of the College of Osteopathic Medicine under which Defendant Nassar worked as an Associate/ Assistant Professor.

79.    At relevant times Defendant Kovan was the Chair/Clinic Director of the MSU Sports Medicine Clinic under which Defendant Nassar worked as Doctor of Osteopathic Medicine and the Head Team Physician for MSU Athletics under which Defendant Nassar worked as Team Physician for the MSU Women's Gymnastics Team.

80.    Defendant Kathie Klages was Head Coach of the MSU Gymnastics Program and conducted classes and programs for minor children and young adults who were not MSU student athletes.

81.    Defendant Klages regularly referred MSU student athletes as well as young athletes who were not MSU students to Defendant Nassar for medical treatment.

82.    Defendant Destiny Teachnor-Hauk provided athletic training services to MSU student athletes and regularly referred MSU student athletes to Defendant Nassar for medical treatment.

83.    At all relevant times Defendants Nassar, Strampel, Kovan, Klages, and Teachnor-Hauk were acting in the scope of their employment or agency with Defendant MSU.

84.    At all relevant times Defendants Nassar, Strampel, Kovan, and Teachnor-Hauk had a special relationship and collegial affiliation with one another as co-employees for Defendant MSU and as fellow medical professionals.

85.    At all relevant times Defendants Nassar and Klages had a special relationship and collegial affiliation with one another as Klages was the head gymnastics coach and Nassar provided treatment under her direction and control for her athletes and as employees of Defendant MSU.

86.    At all relevant times Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

87.    Defendant Nassar graduated from MSU with a Doctor of Osteopathic Medicine degree in approximately 1993.

88.     Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

a.      Certified Athletic Trainer;

b.      Osteopathic Physician;

c.      National Medical Director;

d.      National Team Physician, USAG;

e.      National Team Physician, USAG Women's Artistic Gymnastics National Team.

89.      As an employee and/or agent of Defendant USAG, Defendant Nassar served in the positions listed above at the 1996, 2000, 2004, and 2012 Summer Olympic Games, at USAG sponsored and sanctioned competitions in the U.S. and internationally, and while he treated USAG members at his office at MSU.

90.     Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

a.      Assistant and/or Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

b.      Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

c.      Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

d       Team Physician, Defendant MSU's Men's and Women's Crew Team;

e       Team Physician, Defendant MSU's Intercollegiate Athletics;

f.      Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

g.      Advisor, Student Osteopathic Association of Sports Medicine.

91.    As an Assistant and/or Associate Professor for Defendant MSU Division of Sports Medicine, Defendant Nassar provided medical services for Defendant MSU's Sports Medicine Clinic.

92.    For over twenty (20) years, Defendant MSU's Sports Medicine Clinic has provided health care to MSU student athletes and others.[11]

93.    When the MSU Defendants operated the MSU Sports Medicine Clinic and provided medical services to Plaintiff, and others, they were acting as an arm of the state.

94.    The MSU Sports Medicine Clinic charged patients, including Plaintiff, for her receipt of medical services.

95.    Charging Plaintiff (and others) and billing insurance companies for medical services is an activity proprietary in nature.

---

[11] See, "MSU SportsMedicine," http://sportsmed.msu.edu/, last accessed, February 16, 2018.

96.     Charging Plaintiff (and others) and billing insurance companies for medical services creates a fiduciary and special relationship between Plaintiff and the MSU Defendants.

97.     The MSU Defendants charged fees comparable to specialists for the services provided at the MSU Sports Medicine Clinic.[12]

98.     The MSU Sports Medicine Clinic engaged in proprietary functions by entering into the business of providing medical services for the primary purpose of raising funds and making a profit for the MSU Defendants.

99.     The MSU Sports Medicine Clinic cannot be normally supported by taxes and fees.

100.    By seeking medical treatment and services from Defendant MSU's Sports Medicine Clinic and from Defendant Nassar while in the course of his employment, agency, and/or representation with the MSU Defendants, a special, confidential, and fiduciary relationship existed between Plaintiff, the MSU Defendants, and Defendant Nassar.

101.    As part of Defendant Nassar's employment and contractual duties with Defendant MSU, Defendant Nassar was responsible for spending between 50% to 70% of his time engaged in "Outreach" and/or "Public Services."

---

[12] *See*, "MSU Sports Medicine, Patient Information," http://sportsmed.msu.edu/patients.html, last accessed, February 16, 2018.

102. A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendant USAG.

103. In order to participate in USAG sanctioned events, it is necessary to be a USAG member.

104. To obtain membership with Defendant USAG, an individual must pay dues.

105. Similarly, in order for a gymnastics club to be considered a USAG member club, the gymnastics club must also pay dues, and if the member club seeks to hold a USAG sanctioned event at the club, the club must pay a fee.

106. All those who seek to coach, judge, or participate in USAG sanctioned events must also pay a membership fee.

107. The exchange of money for membership creates a fiduciary relationship and duty between Defendant USAG, its members/athletes, coaches, judges, and its clubs.

108. Defendant USAG regularly recommended Defendant Nassar to its members and member gymnastic clubs as a reputable physician.

109. Plaintiff relied on the recommendations of her USAG member gymnastics club when she sought treatment from Defendant Nassar.

110. The relationship between Defendants USAG, Nassar, and MSU was symbiotic in nature, in that the organizations and Nassar enjoyed financial benefits one from another.

111. The MSU Defendants received financial benefits from their relationships with Defendants Nassar and USAG including increased patients to the Sports Medicine Clinic, increased billing, revenue, and profit for the MSU Sports Medicine Clinic, and national and international recognition, fame, and prestige.

112. Defendant Nassar received financial benefits from his relationship with Defendant USAG and the MSU Defendants including but not limited to increased patients at the MSU Sports Medicine Clinic, additional billing, revenue, and profit for the MSU Sports Medicine Clinic, and national and international recognition, fame, and prestige.

113. Defendant USAG received financial benefits from its relationship with Defendants MSU and Nassar, including but not limited to increased membership in its organization, increased or additional membership fees, and national and international recognition, fame, and prestige.

114. As a physician of Osteopathic Medicine who was trained through a family medicine program and had a sports medicine fellowship, Plaintiff expected

to be treated as any other physician with his training would treat patients for sports-related back injuries.

115.   Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

116.   Defendant Nassar is not and has never been trained or certified as a pelvic floor therapist.

117.   While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

118.   To gain Plaintiff's trust, Defendant Nassar would make her feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life.

119.   Defendant Nassar would see patients, many of whom were minors, including Plaintiff, at Defendant MSU's Sports Medicine Clinic without the presence of another adult (*e.g.*, parent, guardian, resident, nurse, etc.).

120.   Defendants MSU and USAG never trained, educated, or warned patients, including Plaintiff, who were Defendants' patients and members (respectively), that the actions described above were warning signs for sexual abuse and sexual assault.

121. Because of the special and fiduciary relationship shared between the MSU Defendants, Defendant USAG and Plaintiff, each Defendant had a legal duty to exercise reasonable care toward Plaintiff, who was their patient and member (respectively).

122. Collectively, the Defendants breached the duties they owed Plaintiff and ultimately failed to exercise reasonable care, leaving her vulnerable to be sexually abused, assaulted, and molested by Defendant Nassar.

123. During his employment, agency, and representation with the MSU Defendants and Defendant USAG, Defendant Nassar sexually assaulted, abused, and molested Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration without the use of gloves or lubricant, touching of breasts and inappropriate comments.

124. The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[13]

---

[13] *See*, Michigan Administrative Code, R. 325.70001, et seq., Available at http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

125.   Defendant MSU, through its Sports Medicine Clinic, and Defendant Nassar, provided medical care and treatment to Plaintiff who was a patient of Defendant Nassar.

126.   Plaintiff was a business invitee at the MSU Sports Medicine Clinic where she expected to receive medical care and treatment by Nassar, free of harm.

127.   Defendant MSU is not immune from liability as it failed to warn Plaintiff of the known or foreseeable dangers based on complaints related to Defendant Nassar as early as 1997 and failed to train its employees, representatives, and agents about such dangers and to warn and protect Plaintiff from such dangers, and otherwise failed to supervise and train employees of the MSU Sports Medicine Clinic to act in a manner consistent with operating a reasonably prudent facility.

128.   To the best of Plaintiff's knowledge, neither the MSU Defendants, nor Defendant USAG, had or enforced a policy which required their patients and members to have the presence of another adult (*e.g.*, parent, guardian, resident, nurse, etc.) when treating in a private or sensitive area.

129.   Defendants' failures as described above left Plaintiff vulnerable and susceptible to sexual assault and abuse.

130.   In or around 1997 or 1998, Larissa Boyce[14] reported to Defendant Klages concerns regarding Defendant Nassar's conduct and "treatment."

131.   Defendant Klages dissuaded Larissa Boyce from completing a formal report and warned Boyce that the report would have serious consequences for both Boyce and Defendant Nassar.

132.   Around that same time, Jane B8 Doe[15] was questioned by Defendant Klages regarding Nassar's "treatment" and Jane B8 Doe affirmatively confirmed she had also been assaulted and abused.

133.   Defendant Klages told Jane B8 Doe there was no reason to bring up or otherwise report Defendant Nassar's conduct.

134.   In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by Christie Achenbach, a MSU student athlete, after she complained to MSU employees, including trainers and her head coach Kelli Bert, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

135.   Despite her complaints to MSU representatives, Christie Achenbach's concerns and allegations went unaddressed.

136.   In approximately 2000, Tiffany Thomas Lopez, a female student athlete and member of Defendant MSU's Women's Softball Team, was sexually

---

[14] Larissa Boyce is a plaintiff in case 1:17-cv-222.
[15] Jane B8 Doe is a plaintiff in case 1:17-cv-222.

assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

137.  Ms. Lopez's allegations regarding the sexual assault include the following statements:

> Plaintiff is informed and believes, and on that basis alleges, that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information.   The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.  Specifically, the Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

> a.   The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment.  The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world renowned doctor, and that it was legitimate medical treatment.  The Plaintiff continued with the purported treatment;

> b.   As the purported treatments continued, NASSAR became more bold, having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina.  The Plaintiff, again, reported to Defendant MSU training staff, this time a higher ranking trainer.  This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c.  When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment;

d.  Finally, in or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive. The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.[16]

138.  Despite her complaints to MSU employees, agents, and representatives, Ms. Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

139.  Defendants MSU, Kathie Klages, Teachnor-Hauk, and other MSU employees and representatives such as Kelli Bert also had the following obligations, among others, pursuant to its Office of Institutional Equity ("OIE") policy:

a.  "to promptly take steps to investigate or otherwise determine what occurred and then to address instances of relationship violence and

---

[16] *See*, Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles, December 21, 2016, ¶26.

sexual misconduct when it knows or should have known about such instances."

b.  to inform "the MSU Police of all reports it receives regarding sexual assaults.";

c.  to "take immediate steps to initiate the investigatory process to determine what happened and to resolve the matter promptly and equitably.";

d.  to "take prompt, responsive action to support a claimant and will take steps to eliminate, prevent, or address a hostile environment if it determines that one exists.";

e.  "to conduct a prompt, adequate, reliable, and impartial investigation to determine what occurred and then to take appropriate steps to resolve the situation when it learns of an incident of sexual misconduct;

f.  "independently investigate complaints of relationship violence and sexual misconduct.";

g.  to conduct an investigation "by the Office of Institutional Equity under the direction of the Deputy Title IX Coordinator for Investigations.";

h.  to promptly report allegations of sexual misconduct "to the Office of Institutional Equity."

140.   Upon information, and belief, and in violation of federal law, state law, and MSU OIE Policy, Defendant MSU failed to take any action in response to the 1997/1998, 1999, and 2000 complaints.

141.   Because MSU took no action to investigate the 1997/1998, 1999 or 2000 complaints and took no corrective action during that time, under the guise of treatment, Plaintiff and possibly hundreds of others, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital penetration, without the use of gloves or lubricant, and by touching and groping their breasts.

142.   Between 2000 and 2002, Jennifer Rood Bedford raised concerns regarding Defendant Nassar to Athletic Trainer Lianna Hadden telling her she was uncomfortable with Defendant Nassar's conduct and inquired into how to make a complaint/report to indicate she had been uncomfortable with his conduct at her appointments.

143.   Following a discussion with Ms. Hadden, Jennifer Rood Bedford was confused and frightened about the potential repercussion and ultimately did not file a formal complaint.

144.   The MSU Defendants failed to educate Jennifer Rood Bedford and other MSU athletes on issues regarding sexual abuse and sexual assault.

145.   Defendant MSU's athletic trainers and staff were not properly trained or educated regarding osteopathic medicine and therefore followed inadequate safeguards and procedures which put Jennifer Rood Bedford, and other student athletes at risk of suffering sexual abuse and sexual assault.

146.   In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

147.   In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone'" "because of the many cultural stigmas in touching this area."

148.   Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

149.   There is no mention of intra-vaginal or intra-rectal techniques or procedures in the chapter.

150.   As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiff as:

a.   he did not explain any intravaginal or intra-rectal techniques to Plaintiff or her parents; and

b.    he did not warn Plaintiff he was going to engage in vaginal or anal digital penetration before doing so.

151.   Allegedly, after receiving allegations of "athlete concerns," in approximately summer 2015 Defendant USAG relieved Defendant Nassar of his duties.[17]

152.   Defendant Nassar represented publicly that he "retired" from his duties with Defendant USAG.

153.   At no time did Defendant USAG inform Defendant MSU or MSU representatives of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG.

154.   At no time did Defendant USAG inform its member athletes, coaches, or the public that Defendant Nassar had been dismissed, relieved from his duties, and was under criminal investigation.

155.   Instead Defendant USAG allowed its members and the public to believe Nassar simply "retired."

156.   In August 2016 the Indianapolis Star published an article titled, "A blind eye to sex abuse: How USA Gymnastics failed to report cases," the

---

[17] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/ former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

subheading of the article reading, "The prominent Olympic organization failed to alert authorities to many allegations of sexual abuse by coaches."

157. The article chronicles a history of USAG's failure to properly report sexual abuse stating in part:

> Top executives at one of American's most prominent organizations failed to alert authorities to many allegations of sexual abuse by coaches – relying on a policy that enabled predators to abuse gymnasts long after USA Gymnastics had received warnings ...In 2013 ... two former [USAG] officials admitted under oath that the organization routinely dismissed sexual abuse allegations as hearsay unless they came directly from a victim or a victim's parent ... records show the organization compiled complaint dossiers on more than 50 coaches and filed them in a drawer in its executive office in Indianapolis ... [USAG] compiled confidential sexual misconduct complaint files about 54 coaches over a 10-year period from 1996 to 2006 ... It's unclear which, if any, of the complaints in those files were reported to authorities.[18]

158. Following publication of this article Rachael Denhollander and a former Olympic gymnast (who was anonymous at the time, but has since publicly identified herself as Olympian Jamie Dantzscher) contacted the Indianapolis Star with reports of Defendant Nassar's sexual abuse, assault, and molestation.

159. Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

---

[18] *Id.*

    a.    Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[19] and,

    b.    Former patient Rachel Denhollander filed a criminal complaint with the MSU Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

        i.    Massaging her genitals;

        ii.    Penetrating her vagina and anus with his finger and thumb; and

        iii.    Unhooking her bra and massaging her breasts.[20]

160.    Reasons given to Defendant Nassar for his termination included but were not limited to:

    a.    Deviation from "required best practices put in place following the internal sexual harassment investigation conducted ... in 2014;"

---

[19] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/documents/3106054-Jane-JD-COMPLAINT-Signed.html. Last accessed, January 5, 2017.

[20] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/ former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed, January 5, 2017.

b.    Failure to disclose a 2004 complaint to Meridian Township Police; and;

c.    Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

161.    Plaintiff became aware of widespread allegations of sexual abuse against Defendant Nassar sometime after September 12, 2016 through related media coverage.[21]

162.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on $1 million bond.[22]

163.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

164.    According to the federal indictment,[23] Defendant Nassar:

a.    Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

---

[21] *Id.*
[22] State of Michigan, Ingham County Circuit Court Case No. 1603031.
[23] 1:16-cv-242, PageID.1-4.

b.    Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

165.    Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among other allegations, that Defendant Nassar used a GoPro camera to record video images of children in a swimming pool and that:

a.    Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and[24]

b.    Defendant Nassar's thumb can be seen pressing into a child's vagina/vaginal area.[25]

166.    In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Defendant Strampel amid allegations that she:

a.    Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine Clinic at Defendant Nassar's request;

b.    Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and

---

[24] *Id.* at PageID.49-50.
[25] *Id.* at PageID.50.

     c.    Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

167.  On February 7, 2017, a superseding indictment added a count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."[26]

168.  Amid allegations that Defendant Kathie Klages received concerns regarding Defendant Nassar's conduct and "treatment" in 1997 and/or 1998, yet dissuaded the complainant from formally complaining,[27] and for her passionate defense of Defendant Nassar when allegations against him surfaced in fall 2016, on or about February 13, 2017, Defendant MSU suspended Ms. Klages from her duties as Head Coach of MSU's Women's Gymnastics team.

169.  Defendant Klages retired a day after being suspended.

170.  On February 17, 2017, at a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony which

---

[26] *Id.* at PageID.88.

[27] *See*, 1:17-cv-222, PageID.7 and 1:17-cv-257, PageID.4238-4239 (First Amended Complaint).

included, among others, allegations of digital vaginal penetration at Defendant Nassar's residence.

171.   On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[28] and Eaton County, Michigan.[29]

172.   In mid-March 2017, Steve Penny resigned as president of Defendant USAG amid allegations Defendant USAG failed to promptly notify authorities of allegations raised against Defendant Nassar.

173.   Over several days in May and June 2017, victims testified regarding Defendant Nassar's conduct during appointments held at MSU.[30]

174.   On June 23, 2017, Defendant Nassar was ordered to stand trial on twelve charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following conclusion of the preliminary examination hearing

---

[28] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*,
http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_char
ges_Feb._2017_552531_7.pdf

[29] *People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also*,
http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charg
es_Feb._2017_5_52536_7.pdf

[30] *People v. Nassar*, Ingham County District Court Case No. 17-00425-FY.

which included, among others, allegations of digital vaginal and anal penetration at MSU and Defendant Nassar's residence.

175.   On June 26, 2017, Deborah J. Daniels, J.D. released a report titled, "Report to USA Gymnastics on Proposed Policy and Procedural Changes for the Protection of Young Athletes."[31]

176.   Ms. Daniels' report proposed 70 separate policy and procedural changes to Defendant USAG and in a section titled "Overarching Recommendation: Cultural Shift Throughout USA Gymnastics," suggested: "USA Gymnastics needs to undergo a complete cultural change, permeating the entire organization and communicated to the field in all its actions.    Further, USA Gymnastics needs to take action to ensure that this change in culture also is fully embraced by the clubs that host member coaches, instructors and athletes."

177.   Included within the 70 separate policy and procedural changes suggested were the following recommendations:

a.    Seek Individuals With Expertise in Child Protection for Leadership Team;

b.    Change Culture of Entire Staff to Athlete Safety First;

c.    Provide a Stronger Support System to Athletes;

---

[31]Available at:
 https://usagym.org/PDFs/About_USA_Gymnastics/ddreport_062617.pdf
Last accessed Feb. 28, 2018.

    d.      Permit Third-Party Reporting of Policy Violations and Abuse to USAG by Third Parties;

    e.      Require Reporting of Abuse and Reporting of Policy Violations;

    f.      Enforce Serious Consequences for Failure to Report Abuse;

    g.      Expand Reporting Methods to Encourage and Facilitate Reporting;

    h.      Accept and Investigate Reports Relating to Misconduct by a Member in Which the Victim is a Non-Member; and

    i.      Provide Training to All Members and Staff Regarding Reporting Requirements.

178.   To date, it is unknown how many, if any, of the 70 recommendations have been implemented by Defendant USAG or USAG member gyms, coaches, and volunteers.

179.   On July 10, 2017, Defendant Nassar pleaded guilty to the federal charges of child pornography, receipt/attempted receipt of child pornography, and destruction and concealment of records and tangible objects.[32]

180.   On November 22, 2017, Defendant Nassar pleaded guilty to 7 counts of first-degree criminal sexual conduct in Ingham County, Michigan.

181.   On November 29, 2017, Defendant Nassar pleaded guilty to 3 counts of first degree criminal sexual conduct in Eaton County Michigan.

---

[32] 1:16-cv-242, Page ID.114, 119.

182. On December 7, 2017 Defendant Nassar was sentenced to a 720 month (60 year) prison term. The sentence included three 240 month (20 year) terms to be served consecutively.

183. From January 16, 2018 to January 24, 2018, a sentencing hearing was held in Ingham County Michigan for the 7 counts of first-degree criminal sexual conduct to which Defendant Nassar pleaded guilty.

184. From January 31, 2018 to February 5, 2018, a sentencing hearing was held in Eaton County Michigan for the 3 counts of first degree criminal sexual conduct to which Defendant Nassar pleaded guilty.

185. Hundreds of victims provided victim impact statements at the hearings.

186. In total, approximately 204 victim impact statements were given over 9 days in two counties.

187. On January 24, 2018, Defendant Nassar was sentenced to a 40 to 175 year prison term in Ingham County.

188. On February 5, 2018, Defendant Nassar was sentenced to a 40 to 125 year prison term in Eaton County.

189. It was not until Defendant Nassar was charged with and pled guilty to criminal acts based on the same purported medical treatment that Plaintiff received from Defendant Nassar and Plaintiff heard the stories of other patients/victims of

Defendant Nassar during the well-publicized sentencing hearings that Plaintiff first came to understand and accept that the "medical" treatment she received from Defendant Nassar was abusive, was for his own sexual gratification, and was not legitimate medical treatment.

## V.    **FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

190.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

191.    Plaintiff treated with Defendant Nassar at his office at MSU from approximately1999 to 2001, and again in approximately 2009 to 2010.[33]

192.    In 1999-2001, Plaintiff was a minor, approximately12-14 years old.

193.    In 2009-2010, Plaintiff was approximately 22-23 years old and a medical student at the MSU College of Human Medicine.

194.    Plaintiff presented to Defendant Nassar with complaints of injuries to her back and back pain suffered through gymnastics.

195.    On approximately 5-10 separate occasions from 1999-2001, at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff's vagina and anus with his finger and thumb without gloves or lubricant under the guise of performing "treatment."

---

[33] Plaintiff has requested her medical records from Michigan State University to confirm the dates and number of visits. The records had not yet been provided at the time of filing.

196.   Defendant Nassar also massaged Plaintiff's genitals and buttocks and pressed his body against her body throughout the treatment.

197.   When Plaintiff saw Defendant Nassar for back pain in 2009-2010, Defendant Nassar used sexually inappropriate language such as "butt CPR" and touched Plaintiff inappropriately, including on the breasts, pelvis and buttocks, under the guise of osteopathic manipulations.

198.   Defendant Nassar did not give prior notice or obtain consent for digital penetration or to touch Plaintiff's vagina and anus.

199.   Plaintiff did not treat or intend to treat with Defendant Nassar for issues related to obstetrics or gynecology.

200.   Plaintiff believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification.

## VI.   FRAUDULENT CONCEALMENT

### A.   DEFENDANT NASSAR

201.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

202.   Plaintiff had a special relationship with Defendant Nassar given the physician-patient relationship.

203.   Given the special relationship, Defendant Nassar had an affirmative duty to disclose, and to warn and protect Plaintiff who sought his medical treatment from sexual abuse, assault, and molestation.

204.   Plaintiff hereby alleges that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiff's claims and that Plaintiff had a cause of action against Defendant Nassar and/or Defendant MSU or USAG at the time his sexual assaults occurred making material misrepresentations to Plaintiff involving a past or existing fact by:

   a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

   b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

   c.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam" or "checking to see if any ribs were out of place;" and

   d.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes.

205.   The material representations to Plaintiff were false, in that he was actually performing the "treatments" for his own sexual gratification.

206.   When Defendant Nassar made the material representations, he knew that they were false in that he knew that the "treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

207.   Defendant Nassar made the material representations with the intent that the material representations would be acted upon by Plaintiff, in that Plaintiff:

a.     would believe that the "treatments" were in fact "treatments,"

b.     would believe that the "treatments" were proper, appropriate, and legitimate;

c.     would not believe that she had been sexually assaulted;

d.     would not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.     would continue the "treatments" so that he could continue to sexually assault her;

f.     would not question and/or report the conduct to appropriate authorities; and

g.     would not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU.

208.    Plaintiff acted in reliance upon the material representations, in that Plaintiff:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that she had been sexually assaulted;

d.      believed that she should continue the "treatments";

e.      did not believe that she should question and/or report the conduct to appropriate authorities; and

f.      did not reasonably believe that she had and was not aware of a possible cause of action that she had against Defendant Nassar and/or the MSU Defendants.

209.    Plaintiff thereby suffered injury, in that Plaintiff:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatments" and sexual assaults;

c.      and suffered discomfort, sleep deprivation, physical illness, sexual dysfunction, severe emotional distress, anxiety, panic attacks, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss in familial and marital relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was

prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

210.   Concealing the fraud by making fraudulent material representation to Plaintiff that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made material representations to Plaintiff involving a past or existing fact by:

a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam" or "checking to see if any ribs were out of place;" and

d.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes.

211.   Concealing the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.   positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.   prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

c.   did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of sensitive areas of minors and female patients; and

d.   gained Plaintiff's trust by making her feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life.

212. The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

213. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his negligence is imputed to Defendant MSU.

214. At all material times, Plaintiff was entirely free of any negligence contributing to the injuries and damages alleged.

215. Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU until sometime after the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," the criminal charges against Defendant Nassar and the victim impact statements made at his sentencing hearings, for the following reasons among others:

    a.    Plaintiff reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments" and his actions;

    b.    Plaintiff was a minor and young woman at the time of the assaults and "treatments;"

c.      Plaintiff did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because she had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before or had such a procedure or treatment explained;

d.      Plaintiff had never experienced and/or had an intra-vaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

e.      Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because she had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.      Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for

Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

h.  Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

i.  In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

j.   Based on neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

k.   Based on neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

l.   Plaintiff was awed and intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatments" were legitimate and appropriate;

m.   Plaintiff trusted Defendant Nassar due to his notoriety and reputation;

n.   Plaintiff trusted Defendant Nassar because he groomed her to believe that his "treatments" were in fact legitimate "treatments;"

o.   Plaintiff trusted and felt that Defendant Nassar was a friend because he made her feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life;

p.   Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor who was not knowledgeable or aware of the civil justice system;

q.    Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor who was not knowledgeable or aware of any remedy at law;

r.    Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades;

s.    Plaintiff was never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatments" and to conceal the sexual conduct from her parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

t.    Plaintiff was compelled by Defendant Nassar to undergo "treatments" like other athletes if she wanted to continue being involved in gymnastics, stating that the "treatments" were legitimate and appropriate.

u.    Plaintiff was a minor and a young athlete who was easily suggestible; and

v.     Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar.

## B.     THE MSU DEFENDANTS

216.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

217.   Plaintiff sought treatment at Defendant MSU's Sports Medicine Clinic and was in a special relationship with the MSU Defendants in that she paid or was billed for medical treatment.

218.   Given the special relationship, the MSU Defendants had a duty to disclose, and to warn and protect the athletes, including Plaintiff, who sought treatment at their facility with their doctor.

219.   The MSU Defendants' non-disclosure of allegations of sexual abuse and assault by Defendant Nassar as early as 1997 concealed the identity of the abuser and concealed the existence of claims from Plaintiff.

220.   For example, Defendant Teachnor-Hank and Klages' failure to report Defendant Nassar's conduct to law enforcement or MSU concealed the identity of Nassar as Plaintiff's abuser and concealed the existence of Plaintiff's claims.

221.   Plaintiff alleges that Defendant MSU committed Fraudulent Concealment by committing Fraud, and by failing to disclose, warn or protect as described in detail above and below, and concealing the existence of Plaintiff's

claims and that Plaintiff had a cause of action against Defendant Nassar and Defendant MSU at the time his sexual assaults occurred by Defendant Nassar making material representations to Plaintiff.

222.   Defendant   MSU's   employees   and   agents   made   material representations to the public, including the gymnastics community, Plaintiff and her parents, involving a past or existing fact by making statements that:

a.   Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.   Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.   Defendant Nassar's conduct was "not sexual abuse," and

d.   Defendant Nassar was a "world-renowned doctor."

223.   The material representations were false, in that the MSU Defendants had previously received complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatments" had been questioned in the past.

224.   The MSU Defendants made the material representations that they knew were false and/or made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that

Defendant MSU had previously received complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatments" had been questioned in the past.

225.   The MSU Defendants made the material representations with the intent that the material representations should be acted upon by Plaintiff, in that Plaintiff:

a.   would believe that the "treatments" were in fact "treatments;"

b.   would believe that the "treatments" were proper, appropriate, and legitimate;

c.   would not believe that she had been sexually assaulted;

d.   would not question and/or report the conduct to other authorities; and

e.   would not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or the MSU Defendants.

226.   Plaintiff acted in reliance upon the material representations, in that Plaintiff:

a.   reasonably believed that the "treatments" were in fact "treatments;"

b.   reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.   reasonably did not believe that she had been sexually assaulted;

d.      reasonably believed that she should continue the "treatments;"

e.      did not believe that she should question and/or report the conduct to appropriate authorities; and

f.      did not reasonably believe that she had and was not aware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU.

227.   Plaintiff thereby suffered injury, in that Plaintiff:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatments" and sexual assaults; and

c.      suffered discomfort, sleep deprivation, sexual dysfunction, severe emotional distress, anxiety, panic attacks, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss in familial and marital relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

228.    The MSU Defendants concealed the fraud by making fraudulent material representations to Plaintiff that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made material representations involving a past or existing fact by:

a.    making the statement that Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.    making the statement that Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.    making the statement that Defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor;" and,

d.    making the statement that Defendant Nassar's conduct and "treatments" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

229.    The MSU Defendants concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

a. ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;" and

b. did not create a policy to require adults, parents, chaperones, guardians, and/or caregivers presence during an examination of a minor or female by a physician.

230. Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU until sometime after the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," the criminal charges against Defendant Nassar and the victim impact statements made at his sentencing hearings, for the following reasons among others:

a. Plaintiff reasonably relied on the Fraud committed by Defendant Nassar and the MSU Defendants' material representations and concealment of the true nature of his "treatments" and Defendant Nassar's actions;

b. Plaintiff was a minor and/or a young woman at the time of the assaults and "treatments;"

c.    Plaintiff did not know what a legitimate and appropriately performed intra-vaginal treatment was like because she had never experienced and/or had an intra-vaginal treatment before or had such a procedure or treatment explained;

d.    Plaintiff had never experienced and/or had an intra-vaginal treatment before because she had never been treated by a physician and/or therapist that performed them;

e.    Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because she had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.    Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for

Clinical Pathology, and American Society for Colposcopy and Cervical Pathology to name a few;

g.  Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.  Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults

and inform Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

j.   In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiff that she had been sexually assaulted and had a cause of action against Defendant Nassar;

k.   Based on neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.   Based on neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.   Plaintiff was awed and intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatments" were legitimate and appropriate;

n.   Plaintiff trusted Defendants Nassar and the MSU Defendants due to their notoriety and reputation;

o.   Plaintiff trusted Defendant Nassar because he groomed her to believe that his "treatments" were in fact legitimate "treatments;"

p.      Plaintiff trusted and felt that Defendant Nassar was a friend because he made her feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life;

q.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and a young woman who was not knowledgeable or aware of the civil justice system;

r.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action because she was a minor and a young woman who was not knowledgeable or aware of any remedy at law;

s.      Plaintiff had no reason to believe or be aware that she could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.   Plaintiff was never told by the MSU Defendants that Defendant Nassar's conduct was sexual in nature and not legitimate and appropriate "treatments";

u.   Plaintiff was compelled by the MSU Defendants and Defendant Nassar to undergo "treatments" like other athletes if she wanted to continue being involved in gymnastics; therefore the "treatments" were legitimate and appropriate;

v.   Plaintiff was a minor and a young athlete, therefore she was easily suggestible;

w.   Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

x.   Plaintiff reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

y.   Plaintiff trusted that the MSU Defendants would protect Plaintiff from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatments," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

z.    Plaintiff was never told by the MSU Defendants that Defendant Nassar's conduct and "treatments" were inappropriate and sexual assault; to the contrary Plaintiff was told that Defendant Nassar's conduct and "treatments" were appropriate and legitimate "treatments," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing"; and

aa.    Plaintiff reasonably relied on Defendant MSU to protect her and Defendant MSU's statements.

231.    The actions and inactions of the MSU Defendants and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

232.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

233.    The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

234.   At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

235.   At all times pertinent to this action, the MSU Defendants had a special relationship with Plaintiff and had a duty to inform, warn, and protect her (as a minor) of known and foreseeable harm.

236.   At all material times, Plaintiff was entirely free of any negligence contributing to the injuries and damages alleged.

## C.   DEFENDANT USA GYMNASTICS, INC.

237.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

238.   Plaintiff had a special and fiduciary relationship with Defendant USAG by virtue of being a dues paying member with Defendant USAG.

239.   Plaintiff was often under the direct supervision and control of USAG or its agents and was in fact *in loco parentis* with USAG while receiving "treatment" from Defendant Nassar.

240.   Oftentimes while competing at USAG sanctioned events Plaintiff was away from her parents and under the complete care, custody, and control of USAG.

241.   Given the special and fiduciary relationship between Plaintiff and Defendant USAG, Defendant USAG had an affirmative duty to disclose, and to warn and protect its members who sought Defendant Nassar's medical treatment from sexual abuse, assault, and molestation.

242.   Plaintiff was a minor who trusted Defendant USAG, which recommended Defendant Nassar to provide medical services.

243.   Plaintiff incorporates by reference the Fraud claims made above and below and hereby alleges that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiff's claims and that Plaintiff had a cause of action against Defendant Nassar and/or Defendant USAG at the time his sexual assaults occurred by Defendant Nassar (as Defendant USAG's employee or agent) making material representations to Plaintiff involving a past or existing fact by:

a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.      making the statement, explaining, that his acts and/or conduct was doing a "breast exam" or "checking to see if any ribs were out of place;" and

    d.      making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes.

244.   The material representations to Plaintiff by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure.

245.   When Defendant Nassar made the material representations, he knew that they were false, in that he knew that the "treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

246.   Defendant Nassar made the material representations with the intent that the material representations would be acted upon by Plaintiff, in that Plaintiff:

    a.      would believe that the "treatments" were in fact "treatments;"

    b.      would believe that the "treatments" were proper, appropriate, and legitimate;

    c.      would not believe that she had been sexually assaulted;

d.      would not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.      would continue the "treatments" so that he could continue to sexually assault her;

f.      would not question and/or report the conduct to appropriate authorities; and

g.      would not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or Defendant USAG.

247.   Plaintiff acted in reliance upon Defendant Nassar's material representations, in that Plaintiff:

a.      reasonably believed that the "treatments" were in fact "treatments;"

b.      reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.      reasonably did not believe that she had been sexually assaulted;

d.      believed that she should continue the "treatments;"

e.      did not believe that she should question and/or report the conduct to appropriate authorities; and

f.      did not reasonably believe that she had and was not aware of a possible cause of action that she had against Defendant Nassar and/or Defendant USAG.

248.    Plaintiff thereby suffered injury, in that Plaintiff:

a.      could not stop the sexual assault;

b.      continued to undergo the "treatments" and sexual assaults; and

c.      suffered discomfort, sleep deprivation, physical illness, sexual dysfunction, severe emotional distress, anxiety, panic attacks, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss in familial and marital relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

249.    Defendant Nassar concealed the fraud by making fraudulent material representations to Plaintiff that were designed and/or planned to prevent inquiry

and escape investigation and prevent subsequent discovery of his fraud, in that he made material representations to Plaintiff involving a past or existing fact by:

a.     making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.     making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.     making the statement, explaining, that his acts and/or conduct was doing a "breast exam" or "checking to see if any ribs were out of place;" and

d.     making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes.

250.   Defendant Nassar concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.     positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;,

b.      prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

c.      did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

d.      did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and

e.      made Plaintiff feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life, in order to gain her trust.

251.  By failing to inform its members of the allegations surrounding Defendant Nassar which led to his separation from USAG, Defendant USAG suppressed Plaintiff's discovery of a cause of action.

252.  Defendant USAG's fiduciary relationships with its members creates a duty to inform them of prior complaints of sexual abuse by Defendant Nassar, including the reports to Defendant USAG agents as early as 1998.

253.  The actions and inactions of Defendant USAG and Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

254.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

255.  At all material times, Plaintiff was entirely free of any negligence contributing to the injuries and damages alleged.

## VII.  CLAIMS AGAINST THE MICHIGAN STATE UNIVERSITY DEFENDANTS

## A.  COUNT ONE

### VIOLATIONS OF TITLE IX 20 U.S.C. §1681(a), *et seq.* AGAINST DEFENDANT MSU

256.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

257. Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance ..."[34]

258. Plaintiff is a "person" under the Title IX statutory language.

259. Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

260. Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

261. Title IX covers all programs of a school and extends to sexual harassment and assault by employees, students and third parties.[35]

262. Defendant Nassar's actions and conduct were carried out under a program of Defendant MSU, which provides medical treatment to students, athletes, and the public.

---

[34] 20 U.S.C. §1681(a), *et seq. See generally*, U.S. Dept. of Ed., Office of Civil Rights, Dear Colleague Letter: Sexual Violence, April 4, 2011, n. 11 ("Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities."). Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. Last accessed, Feb. 17, 2018.

[35] *See* U.S. Dep't of Educ. Office for Civil Rights, 2001 Guidance, 2001; *see also* U.S. Dep't of Educ. Office for Civil Rights, Dear Colleague Letter: Sexual Violence 4 n.11 (Apr. 4, 2011); U.S. Dep't of Educ. Office for Civil Rights, Q&A on Campus Sexual Misconduct 1 n.1 (Sept. 2017) (stating that rulemaking was pending and prior guidelines issued should be relied upon to determine compliance).

263.   Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiff's vaginal and anal areas, unwelcome sexual or otherwise inappropriate touching of Plaintiff's breasts and body, and inappropriate sexual or sex-based comments, constitutes sex discrimination under Title IX.

264.   As early as 1997/1998, 1999 and/or 2000, an appropriate person at Defendant MSU had actual knowledge of the sexual assaults, abuse, and molestation committed by Defendant Nassar.

265.   Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation through:

   a.   Defendant Kathie Klages by Larissa Boyce and Jane B8 Doe in or around 1997/1998;

   b.   Kelli Bert by Christie Achenbach in or around 1999;

   c.   Defendant Destiny Teachnor-Hauk by Tiffany Thomas Lopez in 2000 on more than one occasion; and

   d.   Lianna Hadden by Jennifer Rood Bedford between approximately 2000 and 2002.

266.   Each of the individuals and Defendants listed above were in a position of authority and at a minimum should have advised that the complainant no longer see Defendant Nassar for "treatment."

267.    The MSU Defendants' response to the complaints was clearly unreasonable in light of the known circumstances given that allegations of sexual abuse and sexual assault were made.

268.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez and Jennifer Rood Bedford's complaints of sexual assault, abuse, and molestation in or around 1997/1998, 1999, 2000, and 2002.

269.    The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

a.    failing to investigate and address Plaintiff Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez, and Jennifer Rood Bedford's allegations as required by Title IX; and

b.    failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

270.    The MSU Defendants acted with deliberate indifference as their lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

271.    The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

a.      A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

b.      The University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[36]

272.    The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

273.    Between the dates of approximately 1996 and 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of patients, including Plaintiff, on school premises.

---

[36] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

274.   The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying her all access to educational opportunities at MSU, including medical care.

275.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## B.   COUNT TWO

### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983 U.S. CONST., AMEND XIV
### AGAINST THE MSU DEFENDANTS AND DEFENDANT NASSAR

276.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

277.   Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

278.   Plaintiff enjoys the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

279.   At all relevant times the MSU Defendants, including Defendant Nassar, were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

280.   The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

281.   The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

282.   As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all

individuals including, but not limited to students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

283. The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their premises, that duty arising under the above-referenced Constitutional rights, as well as established rights pursuant to Title IX.

284. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event..."

285. Defendant MSU's aforementioned internal policies were violated when the MSU Defendants took no actions to address the following complaints regarding Defendant Nassar's conduct:

a.    Larissa Boyce and Jane B8 Doe in or around 1997/1998;

b.    Christie Achenbach in or around 1999;

c.    Tiffany Thomas Lopez in 2000 (on more than one occasion); and

d.    Jennifer Rood Bedford between approximately 2000 and 2002.

286. The MSU Defendants failure to address Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez, and Jennifer Rood Bedford's complaints led to an unknown number of individuals, including Plaintiff, being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

287. Defendants Klages, Teachnor-Hauk, Kovan and Strampel were the moving forces or causes of repeated Constitutional injuries to Plaintiff based on their failures to report, train, supervise, investigate, or otherwise act in response to complaints of Defendant Nassar's conduct.

288. Ultimately, Defendants failed to adequately and properly investigate the complaints of patients including, but not limited to, failing to:

    a.    perform a thorough investigation into improper conduct by Defendant Nassar after receiving complaints in 1997/1998, 1999, 2000 and between 2000 and 2002; and

    b.    thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the conduct of Defendant Nassar.

289. As indicated in the U.S. Department of Education Office of Civil Rights report,[37] the MSU Defendants had a culture that permitted a sexually hostile

---

[37] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-

environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiff.

290.   The report also showed Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the sexually hostile environment.

291.   By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983.

292.   The MSU Defendants are also liable to Plaintiff under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

293.   The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately

---

14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed Feb. 17, 2018.

screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

294.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## C.   <u>COUNT THREE</u>

### FAILURE TO TRAIN AND SUPERVISE
### 42 U.S.C. § 1983 AGAINST MSU DEFENDANTS
### <u>KLAGES, STRAMPEL, KOVAN AND TEACHNOR-HAUK</u>

295.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

296.   The MSU Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives including

Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

297. The MSU Defendants failed to train and supervise their employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

a. Perceive, report, and stop inappropriate sexual conduct on Defendant MSU's premises;

b. Provide diligent supervision over student-athletes and other individuals;

c. Report suspected incidents of sexual abuse or sexual assault;

d. Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

e. Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and

f. Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

298. The above list of duties is not exhaustive.

299. Defendants Klages, Kovan, Teachnor-Hauk, and Strampel had supervisory authority over Defendant Nassar.

300.   At relevant times, Defendant Strampel was the Dean of the College of Osteopathic Medicine under which Defendant Nassar worked as an Associate/Assistant Professor.

301.   At relevant times Defendant Teachnor-Hauk was the athletic trainer for softball, gymnastics, and rowing. Defendant Nassar worked under Defendant Teachnor-Hauk as the Team Physician for the MSU Women's Gymnastics Team.

302.   The MSU Defendants' (including but not limited to Defendants Strampel and Teachnor-Hauk) failure to adequately supervise or investigate Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

303.   The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties, which led to violations of Plaintiff's rights.

304.   As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

305.   As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body,

shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## D.    COUNT FOUR

### GROSS NEGLIGENCE MCL §691.1407
### AGAINST THE MSU DEFENDANTS
### AND DEFENDANT NASSAR

306.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

307.    The MSU Defendants owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

308.    Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

309. By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

310. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event..."

311. Defendant MSU's aforementioned internal policies were violated when the MSU Defendants took no actions to address the following complaints regarding Defendant Nassar's conduct:

a. Plaintiff Larissa Boyce and Jane B8 Doe in or around 1997/1998;

b. Plaintiff Christie Achenbach in or around 1999;

c. Tiffany Thomas Lopez in 2000 (on more than one occasion); and

d. Plaintiff Jennifer Rood Bedford between approximately 2000 and 2002.

312.   The MSU Defendants failure to address Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez, and Jennifer Rood Bedford's complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

313.   Defendants Klages, Teachnor-Hauk, Kovan and Strampel were the moving forces or causes of repeated Constitutional injuries to Plaintiff based on their failures to report, train, supervise, investigate, or otherwise act in response to complaints of Defendant Nassar's conduct.

314.   The MSU Defendants' (including but not limited to Defendants Strampel and Kovan's) failure to supervise or investigate Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

315.   The MSU Defendants' (including but not limited to Defendants Klages and Teachnor-Hauk) failure to report Defendant Nassar to law enforcement or MSU upon receiving complaints of sexual abuse was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

316.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

317.    The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

318.    The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

319.    The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

320.    As a direct and/or proximate result of the MSU's Defendants' actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and

obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

**E.      COUNT FIVE**

### NEGLIGENCE AGAINST THE
### MSU DEFENDANTS AND DEFENDANT NASSAR

321.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

322.   The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

323.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

324.   Plaintiff sought treatment at Defendant MSU's Sports Medicine Clinic in which she paid or was billed for medical treatment and was in a special relationship with the MSU Defendants.

325.   Defendant Nassar owed Plaintiff a duty of ordinary care.

326. The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

327. The MSU Defendants had notice through their own employees, agents, and/or representatives as early as 1997/1998, again in 1999, 2000, and between 2000 and 2002 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

328. The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

329. The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

330. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

331. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and

obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

**F.**     **COUNT SIX**

## VICARIOUS LIABILITY
## AGAINST THE MSU DEFENDANTS

332.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

333.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

334.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

335.   The MSU Defendants employed and/or held Defendant Nassar out to be their agent and/or representative from approximately 1996 to 2016.

336.   Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.[38]

337.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

338.   As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and

---

[38] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## G.    COUNT SEVEN

### EXPRESS/IMPLIED AGENCY
### AGAINST MSU DEFENDANTS

339.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

340.    An agent is a person who is authorized by another to act on its behalf.

341.    The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

342.    On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

343.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

344.    Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

345.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representative of the MSU Defendants, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## H.   COUNT EIGHT

### NEGLIGENT SUPERVISION
### AGAINST ALL MSU DEFENDANTS

346.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

347.   The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiff.

348.    It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

349.    The MSU Defendants by and through their employees, agents, managers and/or assigns, such as Defendants Strampel, Kovan, Klages and Teachnor-Hauk, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

350.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

351.    The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

352.    The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

353.   As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## I.    COUNT NINE

### NEGLIGENT FAILURE TO WARN OR
### PROTECT AGAINST THE MSU DEFENDANTS

354.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

355.   The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

356.   As early as 1997, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

357.   The MSU Defendants knew or should have known Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

358.   The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

359.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, as an employee, agent, and or representative of the MSU Defendants, and Plaintiff.

360.   The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

361.   The MSU Defendants breached its duties to protect Plaintiff by failing to:

   a.   respond to allegations of sexual assault, abuse, and molestation;

   b.   detect and/or uncover evidence of sexual assault, abuse, and molestation; and

   c.   investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

362.   The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have

rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

363.   The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

364.   As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## J.   COUNT TEN

### NEGLIGENT FAILURE TO TRAIN OR
### EDUCATE AGAINST THE MSU DEFENDANTS

365.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

366.    The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiff and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

367.    The MSU Defendants failed to implement reasonable safeguards to:

a.      Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and

b.      Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiff and other young athletes.

368.    As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and

will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## K.   COUNT ELEVEN

### NEGLIGENT RETENTION
### AGAINST THE MSU DEFENDANTS

369.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

370.   The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

371.   The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

372.   The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

373.   The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff and an unknown number of other individuals.

374.   The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

375.   As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## L.   COUNT TWELVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE MSU DEFENDANTS

376.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

377.   The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

378.   A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

379.   The MSU Defendants held Defendant Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

380.   The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community and Defendant MSU's national reputation.

381.   A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

382.   The MSU Defendants' conduct as described above was intentional and/or reckless.

383.   As a direct and/or proximate result of the MSU Defendants' conduct, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

**M.**     **COUNT THIRTEEN**

### FRAUD AND MISREPRESENTATION
### AGAINST MSU DEFENDANTS

384.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

385.   Specifically, Plaintiff incorporates the allegations contained in the section entitled Fraudulent Concealment. See *supra*.

386.   From approximately 1996 to September 2016, the MSU Defendants represented to the public, including the gymnastics community, Plaintiff and her parents, that Defendant Nassar was a competent and safe physician.

387.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to the public, including the gymnastics community, Plaintiff and her parents, that Defendant Nassar was safe,

trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

388.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

389.   As of 1997, the MSU Defendants knew their representations of Defendant Nassar were false as Larissa Boyce, Jane B8 Doe, Christie Achenbach, Tiffany Thomas Lopez and Jennifer Rood Bedford complained of Defendant Nassar's conduct to the MSU Defendants regarding sexual assault, abuse, and molestation in or around 1997/1998, 1999, 2000 and 2000-2002.

390.   Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the complaints.

391.   The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

392.   Plaintiff was subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

393.   As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual

dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

N.  **COUNT FOURTEEN**

**FAILURE TO REPORT CHILD ABUSE MCL 722.621, *et seq.*
AGAINST DEFENDANTS KLAGES AND STRAMPEL**

394.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs

395.  Michigan's Child Protection Law, MCL 722.621 *et seq.*, establishes mandatory reporting guidelines for suspected child abuse or neglect and provides penalties for failure to report child abuse or neglect.

396.  Specifically, MCL 722.623 provides in pertinent part:

A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licenses master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has

reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

397. Child abuse is defined as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy." MCL 722.622(g).

398. Child neglect is defined as "harm or threatened harm to a child's health or welfare by a by a parent, a legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following: (*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care. (*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk." MCL 722.622(k).

399. A person responsible for the child's health or welfare includes a non-parent. MCL 722.622(x).

400. Defendant Nassar was a non-parent adult who was responsible for Plaintiff's health and welfare, had substantial and regular contact with Plaintiff,

had a close relationship with Plaintiff's parents, and was not the Plaintiff's parent or a person otherwise related to the child. (MCL 722.622(v)).

401. Under MCL 722.633(1), "A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

402. Defendants Strampel (physician) and Klages (head coach/administrator) were mandatory reporters during the time Defendant Nassar was engaged in child abuse or child neglect. (MCL 722.622(g)).

403. Complaints and information reported to Defendants Strampel and Klages as described above are incorporated by reference.

404. As established in the allegations throughout the Complaint, Defendants Strampel and Klages also had reasonable cause to suspect child abuse or child neglect.

405. Defendants Strampel and Klages had a duty to report any instances of suspected child abuse or neglect and failed to report.

406. Defendants Strampel and Klages were employed by Defendant MSU during the time Defendant Nassar was engaged in child abuse and child neglect, and were acting in the scope and course of their employment when they failed to report any instances of suspected child abuse or neglect.

407. Defendants Klages and Strampel are directly civilly liable for the damages proximately caused by their failure to report any instances of suspected child abuse or neglect. Defendant MSU is vicariously liable for said damages.

408. As a direct and/or proximate result of the Defendants' actions and/or inactions, Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depression, sleep disorders, psychological injuries, and physical injuries. Plaintiff was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

409. In the alternative, the actions or inaction of the Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, anxiety, panic attacks,

sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depression, sleep disorders, psychological injuries, and physical injuries. Plaintiff was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

## VIII.  CLAIMS AGAINST USA GYMNASTICS, INC.

## A.     COUNT FIFTEEN

### GROSS NEGLIGENCE AGAINST
### DEFENDANT USAG AND DEFENDANT NASSAR

410.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

411.  Defendant USAG owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents.

412.  Plaintiff was a member of USAG, participated in USAG sanctioned events, and was knowledgeable of and referred to Defendant Nassar through USAG affiliations.

413.    Defendant Nassar owed the Plaintiff a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG.

414.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between the Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

415.    Defendant USAG's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

416.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

417.    Defendant USAG's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiff's safety.

418.    Defendant USAG's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

419.    Defendant USAG breached duties owed to Plaintiff and was grossly negligent in the actions described above, including but not limited to the failure to

notify its member athletes as early as 1998, and the failure to notify the MSU Defendants about the reasons for Nassar's separation from USAG and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

420.    As a direct and/or proximate result of Defendant USAG's actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

B.    **COUNT SIXTEEN**

**NEGLIGENCE AGAINST DEFENDANT
USAG AND DEFENDANT NASSAR**

421.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

422.   Defendant USAG owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while being treated by its employees, representatives, and agents.

423.   Plaintiff, as a member of the USAG, had a reasonable expectation that the USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

424.   By being a member of USAG, and by seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG, a special, confidential, and fiduciary relationship between Plaintiff and Defendant USAG, and Plaintiff and Defendant Nassar was created, resulting in Defendants USAG and Nassar owing Plaintiff a duty to use ordinary care.

425.   Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out medical treatment.

426.   Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

427.   Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

428.   Defendant USAG's failure to inform Plaintiff and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG was a breach of ordinary care.

429.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff was a breach of the duty to use ordinary care.

430.   As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

C.     **COUNT SEVENTEEN**

**VICARIOUS LIABILITY**
**AGAINST DEFENDANT USAG**

431.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

432.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

433.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

434.   Defendant USAG's website contained sites portraying Defendant Nassar as the recipient of distinguished awards and boasted him as having been "instrumental" to the success of USA gymnastics.[39]

435.   Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1986 to 2015.

436.   Defendant USAG is vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, or agency with Defendant USAG and while he had unfettered access to young female athletes.

437.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,

---

[39] For example, *see*,https://usagym.org/pages/post.html?PostID=14677&prog=h, Last accessed, January 5, 2017.  This site is no longer accessible.

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## D.    COUNT EIGHTEEN

### EXPRESS/IMPLIED AGENCY
### AGAINST DEFENDANT USAG

438.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

439.   An agent is a person who is authorized by another to act on its behalf.

440.   Defendant USAG intentionally or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

441.   On the basis of those representations, Plaintiff reasonably believed and relied upon the belief that Defendant Nassar was acting as an employee, agent, and/or representation of Defendant USAG.

442.   Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendant USAG.

443.   Plaintiff was injured because she relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care.

444.   As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

**E.**     **COUNT NINETEEN**

### NEGLIGENT SUPERVISION AGAINST DEFENDANT USAG

445.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

446.   Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the

course of his employment, agency and/or representation of Defendant USAG and while he interacted with young female athletes including Plaintiff.

447.   It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiff, unless properly supervised.

448.   Defendant USAG by and through its employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

449.   Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

450.   The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendant USAG.

451.   Defendant USAG tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately

screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

452.   As a direct and/or proximate result of Defendant USAG's negligent supervision, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

**F.**     **COUNT TWENTY**

**NEGLIGENT FAILURE TO WARN
OR PROTECT AGAINST DEFENDANT USAG**

453.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

454.   Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USAG.

455.   Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff or those in Plaintiff's situation.

456.   Defendant USAG had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

457.   Defendant USAG knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

458.   Defendant USAG had a duty to warn or protect Plaintiff (its members) and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

459.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendant USAG and Plaintiff.

460.   Defendant USAG breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

461.   Defendant USAG failed to warn its members about prior complaints regarding Defendant Nassar.

462.   Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate

Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG affiliation and USAG sanctioned events.

463. Defendant USAG failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiff.

464. Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

465. As a direct and/or proximate result of Defendant USAG's negligent failure to warn or protect, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## G.   COUNT TWENTY-ONE

### NEGLIGENT FAILURE TO TRAIN OR
### EDUCATE AGAINST DEFENDANT USAG

466.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

467.   Defendant USAG breached its duty to take reasonable protective measures to protect Plaintiff and other individuals from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals (including minors) about how to avoid such a risk.

468.   Defendant USAG failed to implement reasonable safeguards to:

a.       Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and

b.       Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young athletes.

469.   Defendant USAG failed to train or educate its members regarding the foreseeability and danger of sexual abuse by adults in authority positions.

470.   As a direct and/or proximate result of Defendant USAG's negligent failure to train or educate, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual

dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## H.  COUNT TWENTY-TWO

### NEGLIGENT RETENTION
### AGAINST DEFENDANT USAG

471. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

472. Defendant USAG had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

473. Defendant USAG was negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in its failure to adequately investigate, report, and address complaints about his conduct of which it knew or should have known.

474.   Defendant USAG was negligent in the retention of Defendant Nassar when after it discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

475.   Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiff as well as an unknown number of other individuals.

476.   The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff as well as other minors and young adults.

477.   As a direct and/or proximate result of Defendant USAG's negligent retention, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

I.      **COUNT TWENTY-THREE**

## INTENTIONAL INFLICTION OF EMOTIONAL
## DISTRESS AGAINST DEFENDANT USAG

478.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

479.   Defendant USAG allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

480.   A reasonable person would not expect Defendant USAG to tolerate or permit its employee, agent, or representative to carry out sexual assault, abuse, or molestation.

481.   Defendant USAG held Defendant Nassar in high esteem and acclaim, which in turn encouraged Plaintiff and others to respect and trust Defendant Nassar and to seek out his services and to not question his methods or motives.

482.   Defendant USAG protected Defendant Nassar in part to bolster its national and international reputation in the gymnastics community.

483.   A reasonable person would not expect Defendant USAG to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse and molestation.

484.   Defendant USAG's conduct as described above was intentional and/or reckless.

485.   As a direct and/or proximate result of Defendant USAG's conduct, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## J.    COUNT TWENTY-FOUR

### FRAUD AND MISREPRESENTATION
### AGAINST DEFENDANT USAG

486.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

487.   Specifically, Plaintiff incorporates the allegations contained in the Fraudulent Concealment section.  See *supra*.

488.   From approximately 1996 to summer 2015, Defendant USAG represented to the public, including the gymnastics community, Plaintiff and her parents, that Defendant Nassar was a competent, ethical, and safe physician.

489.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to the public, including the gymnastics community, Plaintiff and her parents, that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

490.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

491.   Additionally, complaints were made to Defendant USAG, either directly or through its agents, yet Defendant USAG did not contact its members, including Plaintiff, or the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

492.   Plaintiff relied on the assertions of Defendant USAG in seeking treatment from Defendant Nassar.

493.   Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

494. As a direct and/or proximate result of Defendant USAG's fraudulent misrepresentations, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## IX.   CLAIMS AGAINST LAWRENCE NASSAR, D.O.

### A.   COUNT TWENTY-FIVE

**ASSAULT & BATTERY
AGAINST DEFENDANT LAWRENCE NASSAR, D.O.**

495. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

496. The acts committed by Defendant Nassar against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

497. Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the body of Plaintiff.

498.   Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting her to an imminent battery and/or intentional invasions of her right to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

499.   Defendant Nassar assaulted and battered Plaintiff by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching Plaintiff's breasts.

500.   Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

501.   As a direct and/or proximate result of Defendant Nassar's assault and battery, Plaintiff has suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

**B.**    **COUNT TWENTY-SIX**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANT LAWRENCE NASSAR, D.O.**

502.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

503.   Defendant Nassar used his authority and position with Defendants MSU and USAG to sexually assault, abuse, and molest Plaintiff, and an unknown number of other individuals, minors, and young adults.

504.   Defendant Nassar in committing acts of sexual assault, abuse, and molestation as described above under the guise of medical "treatment" exhibited conduct that is extreme, outrageous and/or reckless in nature.

505.   A reasonable person would not expect her physician to sexually assault, abuse, or molest her, and to do so under the guise of medical "treatment."

506.   Defendant Nassar's conduct was intentional and reckless as he repeatedly sexually assaulted, abused, and molested Plaintiff over several years, from approximately 1999-2001 and 2009-2010.

507.   Defendant Nassar's conduct has caused and continues to cause Plaintiff to suffer emotional and psychological distress.

508.   As a direct and/or proximate result of Defendant Nassar's outrageous conduct, Plaintiff has suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction,

physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

C.    **COUNT TWENTY-SEVEN**

**FRAUD AND MISREPRESENTATION
AGAINST DEFENDANT LAWRENCE NASSAR, D.O.**

509.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

510.   Specifically, Plaintiff incorporates the allegations contained in the Fraudulent Concealment section.  See, *supra.*

511.   From approximately 1996 to September 2016, Defendant Nassar represented to the public, including the gymnastics community, Plaintiff and her parents, that he was a competent, ethical, and safe physician.

512.   By representing that he was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Nassar represented to the public, including the gymnastics community, Plaintiff

and her parents, that he was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by him.

513.   The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of individuals at MSU, USAG meets, Defendant Nassar's home, and other locations.

514.   Specifically, Defendant Nassar's false representations included but were not limited to the following:

a.   making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.   making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.   making the statement, explaining, that his acts and/or conduct was doing a "breast exam" or "checking to see if any ribs were out of place;" and

d.   making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes.

515.   The material representations to Plaintiff were false, in that Defendant Nassar was actually engaging in conduct for his own sexual gratification and pleasure.

516.   Plaintiff relied on the assertions of Defendant Nassar in seeking treatment of Defendant Nassar.

517.   When Defendant Nassar made the material representations, he knew that they were false, in that he knew that the "treatments" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

518.   Defendant Nassar made the material representations with the intent that the material representations should be acted and/or relied upon by Plaintiff, in that Plaintiff:

a.   would believe that the "treatments" were in fact "treatments,";

b.   would believe that the "treatments" were proper, appropriate, and legitimate;

c.   would not believe that she had been sexually assaulted;

d.   would not believe that she had been sexually assaulted so that he could prevent discovery of his sexual assaults;

e.   would continue the "treatments" so that he could continue to sexually assault her;

f.     would not question and/or report the conduct to appropriate authorities; and

g.     would not reasonably believe and not be aware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU.

519.   Defendant Nassar concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.     positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.     prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during some examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

c.     did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients; and

d.     made Plaintiff feel special by emphasizing the unique nature of her injury, stating that he presented on her and her injuries at conferences and medical school lectures because he had never seen an injury like

hers before, making Plaintiff feel that only he understood her pain, and sharing details of his personal and family life, in order to gain her trust.

520.   The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted fraud.

521.   Between the times of the 1997 complaint to Defendant Klages, the 1999, 2000 complaint to Defendant Teachnor-Hauk, other MSU coaches and trainers, the 2000 complaint and complaint between 2000 and 2002 to MSU trainers, and September 2016 when he was fired, Defendant Nassar continued to hold himself out as a competent and safe physician.

522.   Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant Nassar's fraudulent misrepresentations.

523.   At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of the MSU Defendants and Defendant USAG, and operated within the scope of his employment and agency, and thus his negligence is imputed to all Defendants.

524.   At all material times, Plaintiff was entirely free of any negligence contributing to the injuries and damages alleged.

525.   As a direct and/or proximate result of Defendant Nassar's fraudulent misrepresentations, Plaintiff has suffered discomfort and continues to suffer pain of

mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendant's actions.

## X.   DAMAGES

526.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

527.   As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff has suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, anxiety, panic attacks, sexual dysfunction, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented from, and will continue to be prevented from, performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity; and has required and

will continue to require treatment, therapy, and counseling to address the mental anguish and despair caused by Defendants' actions.

528.   The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's Constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

529.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

530.   The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs at trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each and all of the above counts where applicable and requests that the trier of fact award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount

Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)    Compensatory damages in an amount to be determined as fair and just under the circumstances for violations of Plaintiff's Constitutional, federal, and state rights, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, emotional distress, anxiety, sexual dysfunction, fright, grief, humiliation, and embarrassment, loss of social pleasure and enjoyment, and other damages to be proved;

b)    Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)    Reasonable attorney fees, interest, and costs; and

d)    Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

## **JURY DEMAND**

Plaintiff, through her attorneys, Braun Kendrick Finkbeiner P.L.C., hereby demands a trial by jury of all issues so triable in this action.

Dated:  September 4, 2018          By:   s/Jamie Hecht Nisidis
                                                     JAMIE HECHT NISIDIS
                                                     Braun Kendrick Finkbeiner P.L.C.
                                                     Attorneys for Plaintiff
                                                     4301 Fashion Square Boulevard
                                                     Saginaw, Michigan  48603
                                                     989-498-2100
                                                     jamnis@braunkendrick.com
                                                     (P48969)

# Exhibit A

## BK

### BRAUN KENDRICK
ATTORNEYS AT LAW

**JAMIE HECHT NISIDIS**
Attorney
TEL: 989.399.0227
FAX: 989.799.4666
EMAIL: jamnis@braunkendrick.com

August 14, 2018

<u>**NOTICE OF INTENT TO FILE CLAIM**</u>

Court of Claims Clerk's Office
Hall of Justice
925 West Ottawa Street
P.O. Box 30185
Lansing, MI 48909

Michigan State University
Office of the General Counsel
426 Auditorium Road, Room 494
East Lansing, MI 48824

Re:   Our Client:   Jane KRA Doe

Potential Adverse Parties:   Michigan State University; Lawrence Nassar, D.O.; Destiny Teachnor-Hauk; Kathie Klages; William D. Strampel, D.O.; Jeffrey Kovan, D.O. and/or the Director of the MSU Sports Medicine Clinic during the relevant time; and other current and former employees or agents of Michigan State University

Potential Claims:   Violation of Title IX; 42 USC §1983 (Equal Protection and Due Process); Assault and Battery; Negligence; Gross Negligence; Negligent Supervision; Negligent Failure to Warn or Protect; Negligent Retention; Negligent Failure to Train or Educate; Intentional Infliction of Emotional Distress; Vicarious Liability; Agency

To Whom It May Concern:

Please be advised that Braun Kendrick Finkbeiner P.L.C. represents the individual listed above. As this case involves claims and allegations of sexual abuse and sexual assault which occurred at the time our client was a minor, we are proceeding anonymously at this time.

Pursuant to MCL 600.6431, please accept this letter as a Notice of Intent to File Claim, which includes my notarized signature as our client's legal representative.

This Notice serves as our client's intent to file claims against Michigan State University, Lawrence Nassar, D.O., Destiny Teachnor-Hauk, Kathie Klages, William D. Strampel, D.O., Jeffrey Kovan, D.O. and/or the Director of the Michigan State University Sports Medicine Clinic during the relevant time, and other former and current employees, agents or representatives of Michigan State University.

{S1446403.DOCX.1}

BRAUN KENDRICK FINKBEINER P.L.C.
4301 Fashion Square Blvd., Saginaw, MI 48603-5218
BRAUNKENDRICK.COM

SAGINAW
TEL: 989.498.2100
FAX: 989.799.4666

MIDLAND
TEL: 989.631.1027
FAX: 989.631.9880

MT. PLEASANT
TEL: 989.775.7404
FAX: 989.775.3764

Page 2
August 14, 2018

Our client's potential claims include but are not limited to the following: Violation of Title IX; 42 USC §1983 (Equal Protection and Due Process); Assault and Battery; Negligence; Gross Negligence; Negligent Supervision; Negligent Failure to Warn or Protect; Negligent Retention; Negligent Failure to Train or Educate; Intentional Infliction of Emotional Distress; Vicarious Liability; Agency.

The claims arise out of multiple instances of sexual assault and battery, molestation and abuse of our client by Lawrence Nassar, D.O., an employee, agent or representative of Michigan State University from approximately 1999 to 2001 when our client was 13 and 14 years of age. Specifically, the claims arise out of Dr. Nassar's digital, vaginal and rectal penetration of our client without proper notice or consent and without gloves under the guise of providing medical care and treatment at his office at the Michigan State University Sports Medicine Clinic. Dr. Nassar used his professional reputation and his position of trust and confidence in an abusive manner. Our client saw Dr. Nassar again for medical treatment as an adult in 2009. At this point, our client is uncertain whether additional sexual abuse took place on that visit but she reserves the right to pursue claims relating to that visit if her memory of the visit becomes clear or if additional evidence suggests that further abuse took place.

It is our understanding that Michigan State University through its agents and employees, including but not limited to Destiny Teachnor-Hauk and Kathie Klages, received complaints that Dr. Nassar was sexually abusing patients as early as 1997 and failed to properly investigate, discipline and prevent Dr. Nassar from continuing his abusive and assaultive conduct.

Our client became aware of similar allegations regarding Dr. Nassar which surfaced in late 2016. It was not until Dr. Nassar was charged with and pled guilty to criminal acts based on the same purported medical treatment that our client received from Dr. Nassar and our client heard the stories of other patients/victims of Dr. Nassar during the well-publicized sentencing hearing that our client came to understand and accept that the "medical" treatment she received from Dr. Nassar as a minor was abusive, was for his own sexual gratification, and was not legitimate medical treatment.

Our client has suffered and continues to suffer injuries including shock, humiliation, emotional distress, anxiety, panic attacks, sexual dysfunction and other physical manifestations thereof.

Thank you for your attention to this matter.

Yours very truly,

JAMIE HECHT NISIDIS

Subscribed and sworn to before me
this 14th day of August 2018.

Bridget A. Boensch -- Notary Public
Saginaw County, Michigan
Acting in Saginaw County, Michigan
My Commission Expires: 11-28-2022

JCN/bab
c:        Client

{S1446403.DOCX.1}

| STATE OF MICHIGAN | **NOTIFICATION** | C/COC/MI | **CASE NO.** |
|---|---|---|---|
| COURT OF CLAIMS | | | 18-200363-O |

Court address 925 W. OTTAWA ST., P.O. BOX 30185
LANSING, MI  48909

Court telephone no.
(517) 373-0807

Judge: _____

Date: 8/20/2018

TO:
    JAMIE HECHT NISIDIS
    4301 FASHION SQUARE BLVD
    SAGINAW MI  48603-1250

| Plaintiff/Petitioner | v | Defendant/Respondent |
|---|---|---|
| JANE KRA DOE | | MICHIGAN STATE UNIVERSITY ET AL |

Comments: This notification acknowledges the notice of claim received on August 20, 2018 has been processed by the Court of Claims.

Your notice of claim was assigned tracking number 18-200363-O.   Please note that this is a tracking number rather than a case number.  Filing a notice of intent or a notice of claim DOES NOT initiate a case in the Court of Claims. [MCL 600.6431].

Acceptance of your notice of claim by the clerk's office does not signify that it meets the pertinent statutory requirements.  You are responsible for ensuring that the notice of claim complies with the requirements for the type of claim you intend to file, including a signature and notarization.

See MCL 600.6431(1).  Requirements for certain types of claims may also be found at MCL 691.1404 and MCL 691.1406.

**This notice has also been sent to:**

    JAMIE HECHT NISIDIS        P 48969 Attorney for PTF 1

DEF 1    MICHIGAN STATE UNIVERSITY

DEF 2    LAWRENCE NASSAR

DEF 3    DESTINY TEACHNOR-HAUK

DEF 4    KATHIE KLAGES

DEF 5    WILLIAM D STRAMPEL

DEF 6    JEFFREY R KOVAN

DEF 7    DIRECTOR OF THE MSU SPORTS MEDICINE CLINIC

DEF 8    FORM EMPLOYEES OR AGENTS OF MICHIGAN STATE

RECEIVED AUG 2 3 2018

NTF            **NOTIFICATION**